IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIRSTEN B.,[1]

        Plaintiff,                                  Civ. No. 3:18-cv-01178-AA

      v.                                           **OPINION & ORDER**

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

AIKEN, District Judge:

Plaintiff Kirsten B. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On August 9, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on October 1, 2007. Tr. 46. The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on April 11, 2014. *Id.* On July 2, 2014, the ALJ issued a decision finding Plaintiff not disabled. Tr. 58. The Appeals Council denied review and Plaintiff sought judicial review of the unfavorable decision. Tr. 1286.

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

On January 5, 2017, the district court issued a decision reversing and remanding the case for further proceedings. Tr. 1285-1318. On remand, the Appeals Council directed the ALJ to conduct further proceedings consistent with the district court order. Tr. 1240. Plaintiff appeared at a hearing before the ALJ on December 28, 2017. Tr. 1240. On April 4, 2018, the ALJ issued a decision finding that Plaintiff was not disabled from October 1, 2007, through Plaintiff's date last insured, March 31, 2013. Tr. 1256. Plaintiff seeks judicial review of that determination.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R.

§§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled.  *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2007 through the date last insured, March 31, 2013.  Tr. 1242.

At step two, the ALJ found that Plaintiff had the following medically determinable impairments: diabetes mellitus; carpal tunnel syndrome status post surgeries; neuropathy; ligament injuries to the shoulder and hip; retinopathy; an anxiety disorder; and an attention deficit disorder.  Tr. 1242-43.  At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment.  Tr. 1243.

The ALJ determined that, as of the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: she can occasionally climb ramps and stairs; she should not climb ladders, ropes, and scaffolds; she can occasionally balance and crawl; she can frequently stoop, kneel, and crouch; she can frequently reach, handle, finger, and feel with her right upper extremity, which is her dominant hand; she should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation; and to hazards such as unprotected heights and exposed moving mechanical parts; she can understand and remember simple instructions, and some detailed tasks; she has sufficient concentration, persistence, or pace to complete simple, routine tasks, as well as detailed tasks "up to SVP 4 and Reasoning Level 4," for a normal workday and workweek; she has sufficient vision to perform a wide variety of tasks

including work requiring occasional reading but may have periodic difficulties with work requiring very fine vision "such as bead work or work with thread,"; and she should only occasionally be required to view a computer screen. Tr. 1244.

At step four, the ALJ determined that Plaintiff could perform her past relevant work as a receptionist. Tr. 1254. In the alternative, the ALJ made findings at step five that Plaintiff could perform work as a hotel housekeeper, a courier, or a parking lot attendant. Tr. 1255-56. As a consequence, the ALJ determined that Plaintiff was not disabled between the alleged onset date of October 1, 2007, and the date last insured, March 31, 2013. Tr. 1256.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that

an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts the ALJ erred by (1) violating the law of the case doctrine by deviating from the findings of the district court in the prior judicial review and (2) improperly discounting medical opinion of treating physician Kevin Carpenter, M.D.

### I.     Law of the Case

Plaintiff asserts that the ALJ erred by deviating from the findings made by the district court in Plaintiff's prior judicial review. Plaintiff's previous application for disability benefits was denied in 2014 and Plaintiff sought judicial review by filing a complaint in this District. Tr. 1286. In that case, Plaintiff asserted that the ALJ erred by discounting her subjective symptom testimony; rejecting the opinion of treating physician Dr. Carpenter; classifying her past relevant work by its least demanding function; and by concluding that the receptionist position was consistent with Plaintiff's RFC. Tr. 1290. In an Opinion and Order issued on January 5, 2017, the district court affirmed the ALJ's findings with respect to Plaintiff's credibility, Tr. 1290-1300, and found that the ALJ did not err by classifying Plaintiff's past relevant work according to its least demanding function, Tr. 1309-12, but found that the ALJ had erred by discounting portions of Dr. Carpenter's opinion, Tr. 1300-08, and by finding that the receptionist position was consistent with Plaintiff's RFC, Tr. 1312-17. The district court reversed and remanded for further proceedings. Tr. 1317.

With respect to Dr. Carpenter, the district court found that the ALJ had not erred by rejecting Dr. Carpenter's opinion concerning standing and walking limitations, but that the ALJ had erred by discounting Dr. Carpenter's opinion concerning limitations on Plaintiff's use of her right hand and on "close vision" tasks. Tr. 1308. Of note, the district court declined to apply the

credit-as-true rule to Dr. Carpenter's opinion because portions of that opinion were properly discounted. Tr. 1317.

With respect to Plaintiff's ability to do the receptionist position, the prior ALJ's decision limited Plaintiff to "simple and detailed tasks" and excluded "complex tasks." Tr. 1312. The receptionist position carried an SVP of 4 and a General Educational Development ("GED") reasoning level of 3 and the district court concluded that this requirement was inconsistent with the limitations in Plaintiff's RFC. Tr. 1312-13. The district court concluded that a limitation to simple, detailed, non-complex tasks was consistent with a GED level of 2, rather than level 3. Tr. 1315-16.

The district court concluded that, on remand, the ALJ should consider a new RFC based on the portions of Dr. Carpenter's opinion that were improperly discounted and that the ALJ should obtain further Vocation Expert ("VE") testimony concerning jobs Plaintiff could perform before making a determination of disability. Tr. 1317.

On remand, the ALJ found that Plaintiff could perform "simple, routine tasks as well as some detailed tasks," and that she had the concentration, persistence, and pace to sustain "up to SVP 4 and Reasoning Level 3." Tr. 1244. Plaintiff argues that this finding is contrary to the conclusions reached by the district court and violates the law of the case doctrine.

"The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). Law of the case doctrine "is concerned primarily with efficiency," and "should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Id.*

In this case, as the Commissioner points out, the ALJ considered a substantial number of new medical records, *see* Tr. 1268 (admitting new evidence into the record), a new opinion from Plaintiff's treating physician, Tr. 1875-77, and held a new hearing where new VE testimony was elicited, Tr. 1265-84. The Court concludes that the evidence on remand was substantially different, which in turn led to a more detailed RFC. *Compare* Tr. 50 ("The claimant can perform simple and detailed tasks, but cannot perform complex tasks.") *with* Tr. 1244 ("[Plaintiff] can understand and remember simple instructions and some detailed instructions; she has sufficient concentration, persistence, or pace to complete simple, routine tasks as well as some detailed tasks (up to SVP 4 and Reasoning Level 3) for a normal workday and workweek."). Accordingly, the law of the case doctrine does not apply and the ALJ did not err by finding that Plaintiff's RFC encompassed tasks up to SVP 4 and GED level 3.

## II. Medical Opinion Evidence

Plaintiff contends that the ALJ erred by discounting the medical opinion of Plaintiff's treating physician Dr. Carpenter. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

In February 2014, Dr. Carpenter submitted a letter and Physical Capacity Statement in support of Plaintiff's application for disability benefits. Tr. 886-90. In his letter, Dr. Carpenter reported that Plaintiff suffered from chronic hip pain, left knee pain, carpal tunnel, fatigue, and "Diabetes Mellitus Type I which has resulted in neuropathy in her hands and feet, as well as blindness in her right eye associated with headaches and vertigo." Tr. 886. Dr. Carpenter opined that Plaintiff's diabetic neuropathy and carpal tunnel syndrome caused pain her hands and a tendency to drop things, which would "more than likely limit her handling, gripping and fingering to no more than occasionally (up to 1/3 of an eight hour work day)." *Id.* "Due to her vision problems, [Plaintiff] should not read, look at a computer screen, or do other tasks which require close vision, and these activities should be followed by a break of at least 20 minutes to rest her eyes." *Id.* Dr. Carpenter reported that Plaintiff would require unscheduled breaks to like down and rest in addition to her normal breaks. *Id.* In addition, the "combination of diabetic neuropathy in her feet, left knee pain and hip pain would more than likely limit [Plaintiff's] combined standing and walking to no more than two hours in an eight hour day, and then only if she can change position from sitting to standing at will." *Id.*

In his Physical Capacity Statement, Dr. Carpenter reported that Plaintiff could walk for 2 city blocks and could sit, stand, or walk for 2 hours in an 8-hour day. Tr. 887. Dr. Carpenter opined that Plaintiff would need to alternate positions for up to 30 minutes and would need to take 2-3 unscheduled 20-minute rest breaks during the workday. Tr. 888. Plaintiff would need to lie down during these breaks and would need to sleep during daylight hours. *Id.* Plaintiff could frequently reach overhead with her arms and operate foot pedals and could occasionally bend at the waist, climb, grasp, manipulate, push/pull with her feet, twist, balance, or stoop. Tr. 889. Plaintiff could never squat, crawl, crouch, engage in repetitive grasping or repetitive pushing or

pulling her hands. *Id.* She could occasionally lift and carry less than 10 pounds but could never lift or carry greater weight. *Id.* She was capable tolerating moderate stress or more and her symptoms would never interfere with her ability to perform even simple work tasks. Tr. 889-90. She would be absent more than 2 days per month due to her conditions. Tr. 890. Plaintiff's prognosis was "guarded." *Id.*

The ALJ gave "minimal weight" to Dr. Carpenter's 2014 opinion. Tr. 1251. First, the ALJ noted that Dr. Carpenter's opinion was not consistent with the objective findings in Dr. Carpenter's treatment records or with Plaintiff's other medical records. *Id.* With respect to Plaintiff's hands, the ALJ noted that the previous ALJ had erred by discounting Dr. Carpenter's manipulative limitations and that, on remand, the ALJ "credited Dr. Carpenter's opinion regarding manipulative limitations in the right hand, but not the extent of limitations assessed by him, as the record shows she is capable of more than only occasional use of the right hand." *Id.* The ALJ considered Plaintiff's complaints of pain but noted that there was very little evidence showing difficulty using her hands, aside from Plaintiff's 2011 report that her job was "vintage clothing," and she was having difficulty pulling clothes off the rack. Tr. 570, 1206, 1251. The ALJ noted that the record "does not document consistent reports of or contain findings that would corroborate a 'tendency to drop things' that would result in significant manipulative limitations." Tr. 1251-52. The ALJ also noted that Plaintiff did not follow through on recommendations of occupational therapy for her hands, "indicating that the problem was not as bothersome as alleged." Tr. 1252.

The ALJ noted that Plaintiff's daily activities, including cooking full meals and using the computer, supported greater manipulative capabilities than assessed by Dr. Carpenter. Tr. 1252. Inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that provider's opinion. *Ghanim v. Colvin*,

763 F.3d 1154, 1162 (9th Cir. 2014). The ALJ assessment is supported by evidence in the record. *See* Tr. 498-99 (Plaintiff reported caring for her two children, cooking, and other housework); 658 (Plaintiff reported cooking "cooking full course meals," in addition to other household work and "promoting her husband's wallet business,"). The Court concludes that the ALJ did not err in considering Plaintiff's daily activities when weighing Dr. Carpenter's opinion.

Dr. Carpenter is not a hand surgeon and the records "reflect that he did not do testing to assess [Plaintiff's] physical capacity prior to the date last insured" and the assessment he provided is phrased in the present tense and offered nearly a year after Plaintiff's date last insured. Tr. 1252. Plaintiff had only two office visits with Dr. Carpenter prior to her date last insured and only three more prior to his 2014 assessment "and many of those were for short-term conditions not related to disability, all of which significantly limits the value of Dr. Carpenter's opinion." *Id.* The length of treatment relationship and the frequency of examination by the treating physician and the nature and extent of the treatment relationship between the patient and the treating physician are valid considerations in assessing the medical opinion of a treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Here, Dr. Carpenter first began treating Plaintiff in February 2012. Tr. 556. Prior to her date last insured, Plaintiff saw Dr. Carpenter on September 25, 2012, and they discussed possible surgery for Plaintiff's hand and continuing medication for Plaintiff's hip pain. Tr. 661. Plaintiff saw Dr. Carpenter again in December 2012 for knee pain, but x-rays revealed normal findings. Tr. 662-63. The Court concludes ALJ reasonably considered the length of Plaintiff's treating relationship with Dr. Carpenter and the infrequency of treatment in assessing Dr. Carpenter's opinion.

Among Plaintiff's visits to Dr. Carpenter was a treatment note from February 21, 2014 for a visit to "fill out paperwork," Tr. 1620, which the ALJ interpreted as showing that Dr. Carpenter

was relying on Plaintiff's subjective symptom report in forming his opinion. Tr. 1252. The ALJ found that Plaintiff's subjective symptom testimony was not reliable, Tr. 1245-51, and Plaintiff has not challenged that determination. An ALJ may properly discount a treating provider's opinion if it is based to a large extent on the plaintiff's self-reports and the ALJ has properly discounted the plaintiff's own subjective symptom reports. *Ghanim*, 763 F.3d at 1162. Here, the Court concludes that the ALJ's assessment is reasonable and the ALJ did not err in concluding that Dr. Carpenter's opinion was based in large part on Plaintiff's own subjective reports.

In sum, the Court concludes that the ALJ did not err in assigning reduced weight to Dr. Carpenter's 2014 opinion.

On December 2017, Dr. Carpenter answered a check-box form from Plaintiff's counsel. Tr. 1875-77. In that form, Dr. Carpenter checked "Yes" for each question, indicating that (1) Plaintiff would be limited to occasional handling, gripping, and fingering; (2) Plaintiff "would not be able to perform a job that requires close vision work" and would "extremely limited" in her ability to read or use a computer in the workplace; (3) Plaintiff would require unscheduled breaks of 20 minutes or more after reading, looking at a computer screen, doing tasks that require visual acuity, or tasks that require her to change her focus frequently; (4) Plaintiff would be limited to no more than 2 hours of combined standing and walking in a workday and must be allowed to change position from sit to stand at will; (5) that the combination of Plaintiff's conditions would result in "bad days" when Plaintiff would be unable to work and that there would likely be 2 such days per month; and (6) "It is more probable than not that [Plaintiff] has had the above described limitations at least since the beginning of 2012, when you began treating her." Tr. 1875-76. In the margins of the form, Dr. Carpenter wrote "Pt reports not able to work at all for an 8 hour day due to condit." Tr. 1876.

The ALJ gave limited weight to Dr. Carpenter's 2017 opinion for "the same reasons noted in conjunction with Dr. Carpenter's previous opinion," and for the additional reason that it alludes to Plaintiff's reports, rather than an objective assessment. Tr. 1252-53. The same reasoning discussed above with regard to Dr. Carpenter's 2014 opinion applies with equal force to Dr. Carpenter's 2017 opinion. The ALJ also noted that Dr. Carpenter's 2017 assessment was prepared "long after the date last insured and is strongly colored by [Plaintiff's] current condition." Tr. 1253. An ALJ may properly assign lesser weight to a medical opinion obtained after an adverse disability determination. *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989). This supplies an additional basis for the ALJ's decision to discount Dr. Carpenter's 2017 opinion.

The Court concludes that the ALJ did not err by assigning reduced weight to the medical opinion of Dr. Carpenter. As a result, the ALJ did not err by declining to include the limitations assessed by Dr. Carpenter in Plaintiff's RFC, as Plaintiff contends.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ___7th___ day of April 2022.

       /s/Ann Aiken
       ANN AIKEN
       United States District Judge